The widow appeals from a ruling that a postnuptial agreement that she had signed was valid and, therefore, barred her petition for an elective share of the deceased husband's estate. We affirm.
This case arose from the following facts:
Thurlow E. Tibbs and Anna H. Tibbs were married on February 5, 1977, and remained married until Mr. Tibbs's death on October 20, 1984. Prior to their marriage, they had lived together for approximately five months in Mr. Tibbs's Montgomery home. Prior to that time, the wife had lived with her sister in New York City.
The day before their marriage was to take place, Mr. Tibbs asked the appellant to sign a prenuptial agreement. She refused, according to her, because she "was highly insulted and hurt that he did not trust [her]." Although she testified that she stated that she wished to postpone the ceremony until this matter could be resolved, they married the next day, as they had planned.
Within two hours after their marriage ceremony, and while the two were visiting friends, Mr. Tibbs again asked the wife to sign the agreement. At that time, the wife signed the agreement. It was witnessed by one of the friends they were visiting. The wife testified at trial that she had discussed the agreement with this friend before she signed it. She also testified that she signed the agreement in order to "get some peace and harmony and balance in this relationship." She further testified that she had read the agreement and that she understood what it said. The agreement, in pertinent part, provided:
 "The parties to this agreement agree to abjure and seek no interest whatsoever in the real estate owned by either prior to the marriage. . . . The parties further agree that any valuable furniture or paintings acquired prior to the marriage similarly belong to the respective heirs at law as of prior to the marriage in the event of the death of a party."
Upon Mr. Tibbs's death, the wife filed for a widow's elective share of his estate, despite the fact that she had signed the agreement. The trial court ruled that the agreement was valid and that her claim for an elective share was barred. The wife appeals.
The wife asserts that the trial court erred in holding that the agreement was valid. She contends that there was no full and fair disclosure of assets between the parties, that she did not receive competent independent advice, that the agreement was not supported by adequate consideration, and that the agreement was not fair, just, and equitable from her point of view. She asserts that, under Alabama law, any one of the above factors would invalidate the postnuptial agreement.[1] *Page 1339 
At the outset, we note that prenuptial and postnuptial agreements are valid in Alabama. Ala. Code 1975, §§ 30-4-9,43-8-72; Ruzic v. Ruzic, 549 So.2d 72 (Ala. 1989); Woolwine v.Woolwine, 519 So.2d 1347 (Ala.Civ.App. 1987); Barnhill v.Barnhill, 386 So.2d 749 (Ala.Civ.App. 1980); cert. denied,386 So.2d 752 (Ala. 1980); and Campbell v. Campbell,371 So.2d 55 (Ala.Civ.App. 1979). However, courts scrutinize such agreements to determine whether they are just and reasonable.Woolwine; Barnhill; Hall v. Cosby, 288 Ala. 191, 258 So.2d 897
(1972); and Hamilton v. Hamilton, 255 Ala. 284, 51 So.2d 13
(1951).
Section 43-8-72 permits a spouse to waive all statutory rights in the other spouse's property:
 "The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or a waiver signed by the party waiving after fair disclosure."
(Emphasis added.)
This Court has not previously addressed the validity of one spouse's postnuptial waiver of statutory rights in the other spouse's property. However, because the same concerns regarding the existence of undue influence or advantage by the dominant spouse in obtaining a waiver exist both before and after the marriage, we follow the same line of reasoning used in determining the validity of prenuptial waivers.
In Barnhill, the Alabama Court of Civil Appeals established the either/or test that we use here in determining whether the subject agreement is valid. This test may be applied in postnuptial agreements, as well as prenuptial agreements, and it states that, in order for an agreement to be valid, the one seeking to enforce the agreement "has the burden of showing that the consideration was adequate and that the entire transaction was fair, just and equitable" from the other party's point of view or "that the agreement was freely and voluntarily entered into . . . with competent, independent advice and full knowledge of [any] interest in the estate and its approximate value." Barnhill, 386 So.2d at 751.
In a case in which the evidence is presented to the trial court ore tenus, such as this one, the findings of the trial court are presumed correct and will not be set aside unless they are plainly and palpably wrong or unjust. Knox Kershaw,Inc. v. Kershaw, 552 So.2d 126 (Ala. 1989). In this case, there was evidence to support the trial court's findings. Therefore, we affirm.
In order to be valid, a postnuptial agreement must meet one of the two tests set out in Barnhill. The first test requires that the consideration be adequate and that the entire transaction be fair, just, and equitable from the point of view of the party against whom it is being enforced. We first consider the consideration aspect of this test.
Marriage may, under appropriate circumstances, be sufficient consideration for an prenuptial agreement. Stadther v.Stadther, 526 So.2d 598 (Ala.Civ.App. 1988); Barnhill, 386 So.2d at 751; and Woolwine, 519 So.2d at 1349. We note that in the present case, the appellant signed the agreement within two hours of her marriage. The close proximity in time between the marriage and the execution of the agreement would support a finding that the two promises were essentially concurrent, a requirement under the law of consideration. Gregory v. Hardy,53 Ala. App. 705, 304 So.2d 209 (Ala.Civ.App. 1974). Furthermore, Mr. Tibbs also relinquished any right to the wife's estate by this agreement. His relinquishment of a claim could also be considered adequate consideration for the appellant to sign the agreement. *Page 1340 
The first test in Barnhill further requires that the proponent of the agreement must show that the agreement was fair, just, and equitable from the other party's point of view. In this case, the wife testified that she had read the agreement several times and that she understood its contents. In addition, there was evidence from which the trial court could infer that she knew the general extent of Mr. Tibbs's estate. Furthermore, despite the fact that she was initially reluctant to sign the agreement, she nevertheless voluntarily signed it. There was sufficient evidence upon which the trial court could base its finding that the agreement was valid. There is no indication that the trial court was plainly and palpably wrong in holding that this agreement was fair, just, and equitable from the wife's point of view. Therefore, the requirements of the first test have been met.
Because we hold that the requirements of the first test, as outlined in Barnhill, have been met, we do not address the second test.
Based on the foregoing, the trial court could have found that the agreement meets the first part of the either/or test set out in Barnhill. The trial court was not plainly and palpably wrong in holding that the agreement was valid. We affirm.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Although the parties to this appeal present their arguments only under the case law concerning prenuptial agreements, we think the judgment of the trial court can also be sustained under the statutory law concerning postnuptial contracts. See Ala. Code 1975, § 30-4-9; see also Ray v. Ray, 238 Ala. 269,189 So. 895 (1939); Hill v. Hill, 217 Ala. 235, 115 So. 258
(1928); Crowder v. Crowder, 217 Ala. 230, 115 So. 256 (1928);Manfredo v. Manfredo, 191 Ala. 322, 68 So. 157 (1915); Harrawayv. Harraway, 136 Ala. 499, 34 So. 836 (1902)